## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN ARTUSO, | ) | Case No. 1:19-cv-01798 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| WILLIAM FELT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### OPINION AND ORDER

This case arises out of the arrest and prosecution of Plaintiff John Artuso for allegedly raping a woman after he conducted a housing code inspection of her son's apartment. A jury acquitted him on all charges. Plaintiff then brought suit under federal and State law against the Ashtabula County prosecutor and the detectives responsible for the rape investigation. Plaintiff dismissed the prosecutor. (ECF No. 35.) Defendants move for summary judgment on all claims against them. (ECF No. 81.) For the reasons that follow, the Court **GRANTS** Defendants' motion for summary judgment on Claims One and Two. Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining State law claims and **DISMISSES** them **WITHOUT PREJUDICE**.

### STATEMENT OF FACTS

On Defendants' motion for summary judgment, the record establishes the following undisputed facts, which the Court construes in the light most favorable to Plaintiff, as it must in the current procedural posture.

### A.    Background

Plaintiff John Artuso served as the Housing Code Inspector for the City of Ashtabula from 2013 to 2018.  (ECF No. 72, PageID #731–32.)  Also, he served as an unpaid auxiliary police officer for the City from 2011 to 2018.  (*Id.*, PageID #718.)

The investigation and prosecution underlying Plaintiff's claims began in December 2017.  At that time, the Ashtabula Police Department was investigating the alleged theft of money and property from an abandoned building scheduled for demolition.  (ECF No. 74, PageID #1123.)  Mr. Artuso had access to and from time to time entered the building in his role as housing inspector, and police suspected he was involved in the theft.  (ECF No. 72, PageID #692; ECF No. 77, PageID #1537.)  On December 16, 2017, a local newspaper, the *Star Beacon*, published a story concerning the investigation.  (ECF No. 74, PageID #1123; ECF No. 77, PageID #1513.)

### B.    The Alleged Incident at the Bunker Hill Apartment Complex

After seeing the *Star Beacon* report, Judy Smith approached the Ashtabula County Sheriff's Office.  She reported that Mr. Artuso raped her after he inspected her son's apartment.  (ECF No. 74, PageID #1131.)  The Sheriff's Office referred Smith to Special Agent Melissa Fortunato of the Federal Bureau of Investigation, who was working with Ashtabula police to investigate Mr. Artuso for the alleged theft.  (*Id.*, PageID #1205.)  Fortunato conducted a short interview with Smith, then contacted Detective William Felt with the City of Ashtabula Police Department about Smith's allegation.  (*Id.,* PageID #1143 & #1205.)  On December 19, 2017, Fortunato and Detective Felt interviewed Smith and spoke with her and her husband for over

2

two hours.  (ECF No. 79-1, PageID #1996.)  Both during Smith's initial conversation with Fortunato and again in the interview on December 19, she reported that the following events occurred.

Mr. Artuso inspected the apartment of Travis Smith, the son of Judy Smith, in the Bunker Hill Apartment complex.  (*Id.*)  Judy Smith attended the inspection in her son's stead because he had to work.  (*Id.*; ECF No. 74, PageID #1205.)  Julia Sutch, the manager of the apartment complex, and Smith's niece Jennifer Hubbard also attended the inspection.  (ECF No. 79-1, PageID #1996.)  Some testimony suggests that Smith's sister was also present, but the summary of Fortunato and Detective Felt's interviews with Smith do not mention her sister.  (ECF No. 74, PageID #1144 & #1205; ECF No. 79-1, PageID #1996.)

After Mr. Artuso finished the inspection, Smith left the apartment and went into town.  (*Id.*; ECF No. 74, PageID #1205.)  There, she ran into Mr. Artuso again.  (*Id.*; ECF No. 79-1, PageID #1996.)  He asked her to return to her son's apartment to address some additional issues because Sutch was disputing a point in the inspection.  (ECF No. 74, PageID #1205 & #1145–46; ECF No. 79-1, PageID #1996.)  Smith agreed to do so.  (*Id.*)

Smith and Mr. Artuso returned to the apartment complex in separate vehicles.  (*Id.*)  She unlocked her son's apartment and entered the unit, with Mr. Artuso following behind her.  (ECF No. 74, PageID #1206; ECF No. 79-1, PageID #1996.)  Once they were inside the unit, Mr. Artuso shut the door behind them.  (*Id.*)  Then, according to Smith, Mr. Artuso grabbed her and implied that if she cooperated, he

would make sure her son's apartment passed inspection.  (*Id.*)  Then, Mr. Artuso maneuvered Smith to the floor and began to rape her.  (*Id.*)  Smith stated she kneed Mr. Artuso, at which point he stopped assaulting her and told her, "don't even bother" reporting the rape because he had friends in the police department and nobody would believe her.  (ECF No. 79-1, PageID #1996.)  Mr. Artuso exited the apartment through a rear sliding glass door, which was held shut with a baseball bat.  (*Id.*)

Initially, Ms. Smith could not recall the exact date of the alleged rape, only that it occurred on the day Mr. Artuso inspected her son's apartment.  (ECF No. 74, PageID #1205.)  During Smith's first conversation with Fortunato, she reported that the incident occurred in August 2017.  (*Id.*)  Then she stated during the December 19 interview with Fortunato and Detective Felt that it occurred in November 2017.  (*Id.*, PageID #1134–36.)  After reviewing information in her cell phone, Smith determined the alleged rape occurred on September 15, 2017.  (*Id.*, PageID #1134; ECF No. 79-1, PageID #2038.)  Detective Felt testified that he found Smith's report believable, but he understood that the date discrepancy might cast some doubt on her credibility. (ECF No. 74, PageID #1132.)

### C.   The Investigation

Shortly after interviewing Smith, Ashtabula police initiated an investigation. (ECF No. 79-1, PageID #1196–2002.)  They filed the investigation under the same incident report number as the alleged theft.  (ECF No. 74, PageID #1129.)  Detectives did not interview Mr. Artuso or visit the scene of the alleged crime in December 2017. (ECF No. 74, PageID #1137 & #1188–89.)  However, the police report indicates that

investigators interviewed several witnesses in December 2017.  (ECF No. 79-1, PageID #1996–2002.)

### C.1.    Interviews

Detective Felt interviewed Hubbard (Smith's niece) the same day he interviewed Smith, and Hubbard confirmed that she was present at the inspection of Travis Smith's apartment and that she—Hubbard—was in a sexual relationship with Mr. Artuso.  (*Id.*, PageID #1997.)  Michael Franklin, the City Solicitor, directed Detective Felt to interview the manager of the apartment complex (Julia Sutch) and Smith's son.  (*Id.*)  Sutch confirmed that Mr. Artuso inspected Travis Smith's unit on September 15, 2017, and that she, Smith, and Hubbard were present.  (*Id.*)  The police report does not reflect whether Detective Felt spoke to Travis Smith.  (ECF No. 79-1, PageID #1996–2048.)  Detective Felt testified before the grand jury that he did speak with Travis Smith.  (ECF No. 76, PageID #1452.)  Plaintiff's expert witness report reviews a recording of Detective Felt interviewing Travis Smith dated December 20, 2017.  (ECF No. 78, PageID #1818–20.)

### C.2.    Records

Detectives obtained records of Mr. Artuso's activities on the day of the alleged rape.  Detective Felt testified that Detective Michael Palinkas drafted the subpoena for Mr. Artuso's personal cell phone records.  (ECF No. 74, PageID #1128.)  Detective Doug Hollis retrieved Mr. Artuso's work records from the City.  (ECF No. 79-1, PageID #2037.)  Detectives had these records in December 2017.  (*Id.*; ECF No. 74, PageID #1139–40.)

### C.3.   Mr. Artuso's Activities

Mr. Artuso's work records reflect that he performed twenty-four inspections at seven different locations on September 15, 2017, including several at the Bunker Hill Apartment Complex.  (ECF No. 74, PageID #1233.)  Detective Felt testified that, based on his investigation, Mr. Artuso could not have completed those inspections before 11:45 a.m.  (*Id.,* PageID #1144–45.)  Mr. Artuso's personal cell phone records reflect that he also participated in five phone calls between 11:00 a.m. and 12:00 p.m. on September 15, 2017:  one at 11:02 a.m. that lasted five minutes; one at 11:38 a.m. that lasted two minutes; and one at 11:50 a.m. that lasted a minute; one at 11:51 a.m. that lasted one minute; and one at 11:56 a.m. that lasted four minutes.  (*Id.,* PageID #1147 & #1208.)  Detective Felt understood that Mr. Artuso's inspection of Travis Smith's apartment began at approximately 10:40 a.m. and lasted 20 minutes. (ECF No. 74, PageID #1143.)  Mr. Artuso received another call at 12:06 p.m. that lasted one minute.  (ECF No. 74, PageID #1208.)  Mr. Artuso testified that the call concerned some illegal dumping in town and that he went to meet a colleague to address the issue.  (ECF No. 72, PageID #760.)  In short, these documented activities leave little room, but not no room, for Mr. Artuso to have committed the rape as ultimately charged.

### C.4.   Analysis of Records

Investigators obtained these records but did not analyze them to create a timeline of Plaintiff's activities or whereabouts on September 15, 2017.  (ECF No. 74, PageID #1142; ECF No. 73, PageID #955.)  They had the ability to do so.  (ECF No. 73, PageID # 952–53.)   Detective Felt testified that Ashtabula detectives typically

analyzed available evidence, other than physical evidence that would be submitted to the State Bureau of Criminal Investigation, before presenting a matter to the prosecutor. (ECF No. 74, PageID #1126.)

Detective Cellitti was a lieutenant at the Ashtabula detective bureau, and at the relevant times was Detective Felt's superior. (ECF No. 73, PageID #895.) One of Lt. Cellitti's duties was to ensure that the detectives were doing their jobs, and both he and Police Chief Robert Stell testified that they would expect detectives to analyze the evidence in their possession, such as phone records. (*Id.*, PageID #896; ECF No. 85, Page ID #2212.)

### D. Further Investigation

In September 2018, the detectives conducted a follow-up investigation with Sutch concerning the scene of the alleged rape based on information received from the office of the Ashtabula County prosecutor, who at the time was Nicholas Iarocci. (ECF No. 79-1, PageID #2006.) Specifically, Detective Palinkas investigated whether the sliding glass door through which Mr. Artuso allegedly exited the apartment was operable. (*Id.*) Detective Palinkas visited Sutch on September 6, 2018. (*Id.*) Sutch reported that she told Mr. Artuso and his attorney that the sliding door had been inoperable for several years. (*Id.*, PageID #2007.) Defendant Palinkas attempted to open the door and found it opened with "some force." (*Id.*, PageID #2009.) Detectives did not undertake these investigative steps in December 2017 before Detective Felt submitted the investigation to the prosecutor's office. (ECF No. 74, PageID #1136–37.)

### E.    The Search and the Prosecution of Mr. Artuso

On December 13, 2017, approximately a week before Smith came forward with her allegations against Mr. Artuso, Detective Felt executed an affidavit to support a search warrant of Plaintiff's home in connection with the theft investigation.  (ECF No. 74, PageID #1162.)  Mr. Artuso claims that Detective Felt falsified this affidavit because he mentioned Mr. Artuso's "proven criminal activity" when he did not have a basis for this statement.  (*Id.*, PageID #1166; ECF No. 89, PageID #2287.)  During the search of Mr. Artuso's home, investigators recovered evidence they believed linked him to the alleged theft.  (*Id.*, PageID #1168.)  Plaintiff does not point to any evidence in the record suggesting that the Ashtabula County prosecutor used the fruits of this search warrant to prosecute Mr. Artuso for rape.

Detective Felt submitted his investigation file to the prosecutor's office to make a probable cause determination regarding the rape allegation.   (ECF No. 74, PageID #1178–79.)  However, it is unclear whether he transferred Mr. Artuso's work and cell phone records along with the rest of investigation file.  Neither the police department nor the prosecutor's office documented all the contents of the file Detective Felt sent.  (*Id.*)  At the time, under their standard practices, neither the department nor the prosecutor's office itemized in detail the evidence conveyed to the prosecutor's office.  (ECF No. 76, PageID #1318–19; ECF No. 85, PageID #2213.)  Plaintiff claims that detectives intentionally altered the file to withhold the work and phone records from the prosecutor's office.  (ECF No. 89, PageID #2287.)

Iarocci does not recall seeing Mr. Artuso's work and personal cell phone records before convening the grand jury.  (ECF No. 76, PageID #1373.)  He testified that, if

the police had Mr. Artuso's work and personal cell phone records, he would have expected that information to be conveyed to his office and presented to the grand jury and that he would have presented the records if he had them.  (*Id.,* PageID #1372 & 1381.)  In January 2018, Iarocci presented the case to the grand jury, which indicted Mr. Artuso on three counts:  (1) rape; (2) kidnapping; and (3) sexual battery.  (*Id.*, PageID #1330 & #1416–17.)  During Detective Felt's grand jury testimony, Iarocci asked him whether the police had any documentation from Mr. Artuso. (ECF No. 76, PageID #1452.)   Detective Felt testified that Mr. Artuso did not produce any documents.  (*Id.*)  Plaintiff alleges Detective Felt lied in response to questions from Iarocci during his testimony before the grand jury.  (*Id.*, PageID #1324–27.)  Also, Smith testified before the grand jury.  (*Id.*, PageID #1458–76.)

Although Iarocci did not see Plaintiff's work and phone records before convening the grand jury, he saw them after the grand jury indicted Mr. Artuso. (ECF No. 76, PageID #1376.)  Iarocci testified that he continued to believe he could obtain a conviction in the rape case after he received the records, which is why he took the case to trial.  (*Id.*, PageID #1380.)  He believed there was a window of time during which the alleged rape could have occurred.  (*Id.*, PageID #1384.)

On February 1, 2018, Mr. Artuso was arrested for the rape and tried in September 2018.  (ECF No. 72, PageID #749 &780–81; ECF No. 76, PageID #1331–32.)  Mr. Artuso's cell phone and work records were admitted into evidence at trial. (ECF No. 72, PageID #758–59.)  A jury acquitted Mr. Artuso on all charges.  (ECF No. 76, PageID #1332–33.)

## STATEMENT OF THE CASE

Based on these events, Plaintiff sued Detectives Felt, Hollis, Palinkas, and Cellitti for: (1) malicious prosecution under 42 U.S.C. § 1983; (2) failure to intervene under 42 U.S.C. § 1983; (3) malicious prosecution under State law; (4) intentional and/or negligent infliction of emotional distress under State law; and (5) willful, wanton, and reckless conduct under State law. (ECF No. 27, PageID #209–12.) Also, he sued former prosecutor Iarocci, asserting the same claims (ECF No. 1), but on February 4, 2020, shortly after Iarocci won a seat on the Conneaut Municipal Court, Plaintiff dismissed him as a Defendant. (ECF No. 35.) The remaining Defendants moved for summary judgment on all claims. (ECF No. 81.)

Defendants' motion and Plaintiff's response both address a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City of Ashtabula. (ECF No. 81-1, PageID #2068–69; ECF No. 89, PageID #2300–01.) Plaintiff sued Defendants in their official capacities as detectives for the City of Ashtabula Police Department, and "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n. 55. However, Plaintiff did not specifically plead a *Monell* claim in any count. And a municipality cannot be held liable for a constitutional violation on a *respondeat superior* theory—"in other words, *solely* because it employs a tortfeasor." *Wright v. City of Euclid*, 962 F.3d 852, 879 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 691) (internal citations omitted.) Nevertheless, the Court will address the parties'

10

arguments on the assumption that Plaintiff has sufficiently placed a *Monell* claim at issue.

## ANALYSIS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After discovery, summary judgment is appropriate if the non-moving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th

11

Cir. 1996). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586.

On summary judgment, the central inquiry "determin[es] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Generally, a district court "will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter." *Kermavner v. Wyla, Inc.*, 250 F. Supp. 3d 325, 329 (N.D. Ohio 2017) (citing *Anderson*, 477 U.S. at 249). A district court only examines "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Anderson*, 477 U.S. at 250). However, if "the evidence is merely colorable or is not significantly probative,"

12

summary judgment for the movant is proper. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).

## I. Motions to Strike

Before reaching the substantive arguments raised in Defendants' motion for summary judgment, the Court addresses the parties' motions to strike evidence. "Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions." *Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) Defendants move to strike the grand jury transcript and portions of Plaintiff's expert testimony. (ECF No. 93; ECF No. 94.) Plaintiff moves to strike the transcript of day two of his criminal trial for rape. (ECF No. 91.)

As a threshold matter, the Court notes that a motion to strike applies only to pleadings. *See* Fed. R. Civ. P. 12(f). It is not a proper vehicle for attacking exhibits filed in support of, or in opposition to, motions for summary judgment. *Goodwin v. American Marine Express, Inc.*, No. 1:18-CV-01014, 2021 WL 848948, at *8 (N.D. Ohio Mar. 5, 2021); *see also Andrews v. Lecats Ventriloscope LLC*, No. 5:19-CV-01792, 2022 WL 704578, at *3 (N.D. Ohio Mar. 9, 2022). Instead, in this procedural posture, motions to strike should be construed as objections under Rule 56(c)(2). *Andrews*, 2022 WL 704578, at *3; *see also* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment. Rule 56(c)(2) governs objections to the admissibility of evidence offered to support a factual assertion in a motion for summary judgment. Under this

Rule, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Accordingly, the Court construes the parties' motions to strike as objections under Rule 56(c)(2).

Under Rule 56(c)(2), the Court will disregard any inadmissible portions of the evidence at issue. In evaluating an objection under Rule 56(c)(2), the Court "should disregard [inadmissible evidence] rather than striking it from the record." *Stephenson v. Family Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2021 WL 795551, *5 (N.D. Ohio Mar. 3, 2021) (cleaned up). "It is well settled that only admissible evidence may be considered by the trial court ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (cleaned up).

### I.A.    Grand Jury Transcript

Defendants object to Plaintiff's citation of the grand jury transcript to oppose their motion for summary judgment. (ECF No. 93.) Defendants argue that the Court should not consider Detective Felt's testimony before the grand jury because he enjoys immunity from suit for that testimony, rendering it inadmissible as irrelevant. (*Id.*, PageID #2560–61.) Plaintiff opposes, arguing the testimony is "relevant to Defendants' conduct outside the grand jury proceedings," Defendants are not immune from suit in their official capacities for grand jury testimony, and the testimony is admissible as impeachment evidence. (ECF No. 97, PageID #2783.) Under Rule 402, "irrelevant evidence is not admissible." Fed. R. Evid. 402. Defendants are correct that Detective Felt enjoys absolute immunity for his testimony before the grand jury, even if that testimony included false statements. *Rehberg v. Paulk*, 566 U.S. 356, 367–70 (2012).

14

At this stage of the proceedings, however, the Court overrules this objection. As Plaintiff argues, while Detective Felt enjoys absolute immunity for his grand jury testimony, it could be relevant to prove other facts or for impeachment purposes. (ECF No. 97.) The standard for relevance is broad and simply means that a fact has consequence to determining the action or has any tendency to make a fact more or less probable. Fed. R. Evid. 401. Further, the grand jury testimony does not alter the Court's resolution of Defendants' motion for summary judgment. For these reasons, the Court overrules Defendants' objection.

### I.B.    Criminal Trial Transcript

Plaintiff objects to Defendants' citation to day two of the trial transcript from Mr. Artuso's prosecution on the ground it was submitted for the first time in reply. (ECF No. 91.) Defendants filed notice that they would submit the transcript on June 3, 2021 (ECF No. 90), after Defendants filed their opposition brief (ECF No. 89). Plaintiff argues use of the transcript after he opposed the summary judgment motion deprives him of his right to notice and a reasonable opportunity to respond to Defendants' arguments. (ECF No. 91, PageID #2534.) Defendants respond that they do not cite the trial transcript in support of a new argument, but to address Plaintiff's argument that no evidence corroborated Smith's allegation, which he raised in his response brief. (ECF No. 95, PageID #1775.) Further, they argue that, where a reply is the moving party's earliest opportunity to address new arguments that a non-movant raises in opposition, the moving party may present new evidence on reply. (*Id.*, PageID #2776.)

15

"[F]or all practical purposes," an issue raised in reply is "the same as if it had not been raised at all as a basis for summary judgment." *McGruder v. Metropolitan Gov't of Nashville & Davidson Cnty.*, No. 3:17-cv-1547, 2020 WL 4586171, at *3 (M.D. Tenn. Aug. 10, 2020). While "a district court nonetheless has the discretion to consider an issue raised in a reply brief, or new evidence submitted with a reply, it must give the opposing party a reasonable opportunity to respond to the new argument or evidence. Failure to do so is an abuse of discretion." *Id.* at *2 (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).

However, the Court may consider additional evidence submitted with a reply brief where the moving party seeks to "address new arguments presented in a plaintiff's response." *Matthews v. Wells Fargo Bank*, 536 F. App'x 577, 579 (6th Cir. 2013). Defendants maintain that this exception applies because Plaintiff argued in opposition that Defendants continued to receive exonerating evidence—specifically the operability of the sliding glass door—that they ignored. (ECF No. 89, PageID #2288.) Contrary to Defendants' argument, Plaintiff has identified this as an issue in the litigation since he filed his complaint. (ECF No. 27, PageID #207.)

Although Plaintiff can hardly claim surprise by the transcript of a trial in which he was the defendant, the Court sustains Plaintiff's objection and will not consider the trial transcript in ruling on Defendants' motion for summary judgment. Further, the Court notes that it can rule on Defendants' motion without reference to the transcript. Defendants use the trial transcript to support a single fact in their

16

reply—that Travis Smith testified at trial that he used the sliding door often to exit his apartment and secured it with a baseball bat.  (ECF No. 92-1, PageID #2543.)

### I.C.    Plaintiff's Expert Witness Testimony

Defendants argue that the Court should not consider portions of the expert report and deposition testimony of Joseph Matthews, Plaintiff's expert witness (ECF No. 78, PageID #1765), because he states legal conclusions and improperly makes statements concerning Defendants' state of mind (ECF No. 94, PageID #2563.)

### I.C.1. Rule 702

Rule 702 "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  At bottom, this gatekeeping function ensures that expert evidence rests on a reliable foundation and is relevant to the task at hand.  *Daubert*, 509 U.S. at 589, 597.  Additionally, the Court must find that:  (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The Court's gatekeeping role applies to all testimony based on technical or specialized knowledge, not just scientific evidence. *Kumho Tire Co.*, 526 U.S. at 147.

Matthews is a former investigator with over thirty years' experience with the City of Miami Beach police department and the television program America's Most

Wanted.  (ECF No. 78, PageID #1765.)  Since his retirement from the Miami Beach police department, Matthews has assisted police departments in investigating cold cases, specifically homicides and sex crimes.  (*Id.*)  Based on the foundation in his expert report, Matthews is qualified to serve as an expert concerning investigative techniques.  To prepare his expert report, Matthews reviewed the incident report and investigative file, including narrative supplements; Defendants' personnel files; photos of the scene; witness interview recordings; Mr. Artuso's phone and work records; the grand jury transcript; the trial transcript; and a background report on Smith.  (*Id.*, PageID #1843–44.)  The Court concludes that Matthews' expert testimony is based on sufficient facts.

Finally, Matthews sets forth his findings and opinions on the various Defendants, their activities, and the evidence in a thorough 78-page report, plus exhibits and appendices.  (*Id.*, PageID #1765–1842.)  In that report, he evaluates each part of the record and identifies ways in which Defendants' actions fell below standard investigative practices, in his opinion.  (*Id.*)  Therefore, the Court determines, and Defendants do not dispute, that Matthews reliably applied reliable principles and methods to prepare his report.

### I.C.2. Rule 704

Defendants object to certain statements in Matthews' testimony where he uses language that speaks to a state of mind or specific legal standards.  For example, in his report he states that Defendants' "failures exhibited reckless and willful misconduct and was not objectively reasonable."  (*Id.*, PageID #1768.)  Also, he states that Defendants "acted with malicious intentions and in bad faith by ignoring the

rule of law." (*Id.*, PageID #1769.)  As an initial matter, Defendants cite several criminal cases in support of their motion to strike that are not applicable here.  (ECF No. 94, PageID #2566; ECF No. 100, PageID #2804–05 (citing *United States v. Scheffey*, 57 F.3d 1419, 1425 (6th Cir. 1995), and *United States v. Mazumder*, 800 F. App'x 392, 395 (6th Cir. 2020)).)  Expert testimony in criminal cases is subject to the additional requirements of Rule 704(b).

Under Rule 704(a), an expert's opinion in a civil case can "embrace[] an ultimate issue."  Fed. R. Evid. 704(a).  However, expert testimony that "would merely tell the jury what result to reach" is not helpful to the trier of fact and is objectionable under Rule 702 and Rule 403.  Fed. R. Evid. 704 advisory committee note to 1972 amendment.  Plaintiff argues that Matthews uses the terms "reckless" and "willful" to describe Defendants' behavior, not as legal terms of art.  (ECF No. 98, PageID #2791.)  However, Matthews could describe Defendants' acts without these legal terms, which are elements of several of Plaintiff's claims.  For example, he described the overall investigation as "shoddy, incomplete, biased, and reprehensible."  (*Id.*, PageID #1769.)  And he describes Detective Felt's failure to conduct a "proper" investigation as "inexcusable" given Detective Felt's experience and training.  (*Id.*, PageID #1771.)

Matthews' testimony concerning Defendants' various investigatory failures, including strong negative descriptions of those failures, are proper expert evidence. But Defendants identify no fewer than fifteen places where he employs legal terms of art in his analysis.  (ECF No. 94, PageID #2567–68.)  To be sure, expert testimony is

not inadmissible just because the expert uses legal standards or terms of art. *See Heflin v. Stewart Cnty., Tenn.*, 958 F.2d 709, 715 (6th Cir. 1992). In *Heflin*, an expert testified that the defendants acted with "deliberate indifference" while giving his expert opinion that if they had acted quicker, an inmate might have survived a suicide attempt. The district court admitted the opinion, and defendants appealed. The expert, who was a doctor, used the phrase in one sentence and did not "claim to be an expert on the legal requirements for recovery from jail officials for dereliction of duty." *Id.* But Matthews gratuitously parrots and overuses the exact legal standards at issue in this case. To the extent Defendants object to the portions of Matthews' opinions and testimony that impermissibly urge the finder of fact to determine that any of Defendants' actions were wanton, willful, or reckless, the Court sustains the objection. As the Court discussed below, however, much of Matthews' testimony is immaterial to the Court's ruling on this motion.

Finally, Defendants move to strike the portions of Matthews' testimony that examined Detective Felt's grand jury testimony. (ECF No. 94, PageID #2563.) For the reasons the Court overrules Defendants' general objection to the grand jury transcript, the Court overrules that objection with respect to Matthews' testimony.

## II. Federal Claims

As noted, Plaintiff brings three claims under federal law. The Court addresses each in turn.

## II.A.   Malicious Prosecution Under Section 1983

Plaintiff alleges that Defendants violated Mr. Artuso's civil rights by falsely prosecuting him for rape, kidnapping, and sexual battery.  Defendants argue that the presence of probable cause defeats Plaintiff's claim.

To state a claim for malicious prosecution under the Constitution of the United States, Plaintiff must prove:  "(1) the defendant 'made, influenced, or participated in the decision to prosecute;' (2) the government lacked probable cause; (3) the proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in the plaintiff's favor."  *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).  The fourth element does not require any affirmative indication of innocence—just that there was no conviction.  *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).  A plaintiff's malicious prosecution claim cannot be based solely on a defendant's grand jury testimony.  *Rehberg*, 566 U.S. at 375.  The only element the parties briefed is probable cause.  (ECF No. 81-1, PageID #2059–64; ECF No. 89, PageID #2289–95.)

### II.A.1. Probable Cause

Under federal law, Plaintiff must a establish a lack of probable cause for the underlying criminal charge to succeed on a claim of malicious prosecution.  *Lester*, 986 F.3d at 606.  "Establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive."  *Hartman v. Moore*, 547 U.S. 250, 261 (2006); *see also Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142, 559 N.E.2d 732 (1990), syllabus.  Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such

21

activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted). "[G]iven the reduced burdens imposed on the government at this pretrial stage . . . cases will inevitably arise in which the government validly establishes the probable cause necessary for a pretrial detention, but later falls short in proving guilt beyond a reasonable doubt." *Lester*, 986 F.3d at 602 (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).

A grand jury indictment "creates a presumption of probable cause." *Id.* at 608 (citing *King v. Harwood*, 852 F.3d 568, 586 (6th Cir. 2017)). However, that presumption is rebuttable where Plaintiff can demonstrate a genuine question of material fact as to whether:

> (1) a law enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand jury testimony or preparation . . . .

*King*, 852 F.3d at 587–88.

The Sixth Circuit summarized this rule as meaning that the presumption is rebuttable where the defendant fabricated evidence or knowingly or recklessly made a materially false statement "outside the grand jury context." *Lester*, 986 F.3d at 608. Plaintiff misstates the rule of *King*, saying "liability may still be imposed [despite a grand jury indictment] where . . . a defendant causes the initiation of a criminal proceeding *without first forming a belief that probable cause exists*." (ECF No. 89, PageID #2294) (emphasis added). But *King* imposes no such affirmative obligation on law enforcement before referring an investigative file to a prosecutor's office.

Therefore, Plaintiff's reliance on the deposition of Chief Stell (at his deposition in 2020) that there was no probable cause when Detective Felt sent the file to Iarocci is of no consequence here.  (ECF No. 89, PageID #2291, ECF No. 85, PageID #2225–26.) What matters is whether Defendants knowingly or recklessly fabricated evidence or made false statements.  On this score, Plaintiff argues that there is at least a genuine dispute of material fact, pointing to several events outside the grand jury context.

Plaintiff cites *Malley v. Briggs*, 475 U.S. 335 (1986), to argue that investigators who fail to establish probable cause before "seeking to initiate a criminal proceeding" may still be civilly liable, even where a subsequent neutral decision-maker finds that probable cause exists.  (ECF No. 89, PageID #2289–90.)  In *Malley*, however, law enforcement submitted a complaint and affidavit for an arrest warrant to a judge. *Malley*, 475 U.S. at 337–38.  Further, there was no presumption of probable cause because the grand jury declined to return an indictment.  *Id*. at 338.

Also, Plaintiff cites an unpublished case, *Smith v. Williams*, 78 F. 3d 585 (6th Cir. 1996) (table), for the same proposition.    There, the court did not address the presumption of probable cause, even though the Supreme Court held as early as 1932 that "an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Ex parte United States*, 287 U.S. 241, 250 (1932).

In this case, the grand jury indictment creates a presumption of probable cause.  Therefore, the Court considers whether that presumption remains conclusive based on the record.

23

### II.A.2. Presumption

With respect to Defendants Hollis, Palinkas, and Cellitti, there is little question that Plaintiff cannot overcome the presumption. Plaintiff points to no facts to indicate that these Defendants engaged in the kind of conduct contemplated in *King*. He claims that Detective Palinkas misled the prosecutor by reporting the sliding glass door in Smith's apartment opened with "some force." (ECF No. 89, PageID #2288; ECF No. 79-1, PageID #2009.) Even construed in Plaintiff's favor, that fact alone does not undermine the presumption of probable cause attending the grand jury's indictment. Also, Plaintiff focuses on Cellitti's and Hollis's alleged supervisory liability, which the Court will address below in evaluating Plaintiff's failure to intervene claim. (ECF No. 89, PageID #2295 & #2297–99.) Therefore, the Court **GRANTS** Defendants' motion for summary judgment with respect to Plaintiff's malicious prosecution claims against Defendants Hollis, Palinkas, and Cellitti.

Plaintiff's malicious prosecution claim against Detective Felt presents a closer call. Therefore, the Court will analyze whether there is a genuine dispute of material fact as to whether the presumption of probable cause is rebuttable in this case based on Detective Felt's actions.

### II.A.2.i. Setting a Prosecution in Motion

In *King*, the Sixth Circuit supported its exception to the general rule that an indictment establishes probable cause by explaining that law enforcement officers who "set[] a prosecution in motion" are analogous to "complaining witnesses" at common law, as the Supreme Court contemplated in *Rehberg*. *King*, 852 F.3d at 587. At common law, complaining witnesses did not enjoy absolute immunity for their

testimony.  *Rehberg*, 566 U.S. at 370–73.  Generally, a law enforcement officer who testifies before a grand jury is not performing the function of a complaining witness.  *Id.* at 367–68.  And even "a detective or case agent who has performed or supervised most of the investigative work . . . and may very much want the grand jury to return an indictment . . . does not make the decision to press criminal charges."  *Id.* at 371.

Plaintiff argues that Defendants initiated criminal charges against him.  (ECF No. 27, PageID #206.)  The record establishes that Detective Felt led the rape investigation, sent the investigative file to the prosecutor's office, and testified before the grand jury.  Indeed, Detective Felt testified that he sent the investigation file to the prosecutor's office "to make a probable cause determination."  (ECF No. 74, PageID #1178–79.)  However, he did not apply for an arrest warrant or "make the critical decision to initiate a prosecution," *id.*, the prosecutor did.

Under this framework, Detective Felt is arguably not the "complaining witness."  However, the parties dispute Detective Felt's role in the prosecution after the grand jury indictment.  Plaintiff argues that Defendants continued to insist the prosecutor move forward with the prosecution and that he relied on their representations that probable cause existed, (ECF No. 89, PageID #2288), but Iarocci's testimony refutes that position.  He testified that he and the chief assistant prosecutor both found Smith's testimony compelling enough that they believed Mr. Artuso could be convicted at trial.  (ECF No. 76, PageID #1382–83.)  Therefore, the Court will examine the other elements of the *King* exception assuming there is at

least a genuine dispute of material fact as to whether Detective Felt "set in motion" Mr. Artuso's prosecution for rape.

### II.A.2.ii. Grand Jury Testimony

Without question, several of the facts Mr. Artuso points to in support of his malicious prosecution claim cannot be considered grand jury testimony or even preparation for that testimony. However, Plaintiff argues that Detective Felt "offered false testimony before the grand jury," citing the entirety of his testimony. (ECF No. 89, PageID #2287.) Detective Felt enjoys absolute immunity for his grand jury testimony. *Rehberg*, 566 U.S. at 369.

During the grand jury proceeding, Iarocci asked Detective Felt, "What about from Mr. Artuso?" (ECF No. 76, PageID #1452.) Iarocci was asking whether Mr. Artuso provided law enforcement with records corroborating that an inspection took place on September 15, 2017. (*Id.*) Detective Felt replied that Mr. Artuso "did not produce any documents." (ECF No. 76, PageID #1452–53.) However, Defendants were in possession of Mr. Artuso's work records when Detective Felt testified before the grand jury. (ECF No. 79-1, PageID #2037; ECF No. 74, PageID #1139–40.) As a technical matter, Mr. Artuso himself did not produce those records. The City did. But Detective Felt's testimony left a false impression.

Also, Plaintiff submitted Matthews' expert opinion that Detective Felt's grand jury testimony was false. (ECF No. 78, PageID #1827–37.) Matthews opined that Detective Felt exaggerated what Smith reported during the interview on December 19, 2017 and falsely reported that Smith's interview lasted over two hours because Smith was at the Ashtabula police station for over two hours, but Detective Felt and

26

Fortunato were not actively interviewing her for two hours.  (*Id.*, PageID #1827–28.)
Comparing Detective Felt's grand jury testimony (ECF No. 76, PageID #1440–57) to
Smith's testimony (*id.*, PageID #1457–76) and the investigation report (ECF No. 79-1,
PageID #1996–97), his testimony was not substantially dissimilar.  But even if
Detective Felt's grand jury testimony were demonstrably false, it could not serve as
the basis of a malicious prosecution claim under *Rehberg*.

Finally, Plaintiff argues in a footnote that Defendants are not entitled to
absolute immunity because they waived the defense.  (ECF No. 89, PageID #2284 n.1;
*Lester*, 986 F.3d at 609 (citing *Parnell v. City of Detroit*, 786 F. App'x 43, 47 n.3 (6th
Cir. 2019)).)  Unlike the Defendants in *Parnell*, 786 F. App'x at 47 n.3, Defendants
raised absolute immunity as a defense, even though Plaintiff's complaint did not
include allegations regarding Detective Felt's grand jury testimony.  (ECF No. 27.)
Through discovery, it became clear that Plaintiff believed that Detective Felt's grand
jury testimony was false, through the expert report of Mathews, among other things.
(ECF No. 78, PageID #1826–37.)  On this record, the Court declines to find that
Detective Felt waived the defense where, as here, he presented it at the earliest
opportunity after receiving notice of Plaintiff's allegations regarding its falsehood.

### II.A.2.iii. False Statements or Fabricated Evidence

Under *King*, the grand jury indictment creates a presumption of probable
cause that is only rebuttable where the defendants knowingly or recklessly made
"false statements" or "falsified or fabricated evidence."  *King*, 852 F.3d at 587–88.
The Court has already concluded that Detective Felt's grand jury testimony, even if
false, is not enough to rebut the presumption because he enjoys immunity for that

testimony.   That leaves Plaintiff's argument that Detective Felt engaged in misconduct outside the grand jury context.  First, Plaintiff claims that Detective Felt falsified an affidavit to support a search warrant of Mr. Artuso's home.  (ECF No. 89, PageID #2287.)  Second, Plaintiff points to Detective Felt's investigation, namely that he (1) failed to interview all witnesses and ask thorough follow-up questions; (2) failed to gather and preserve evidence, including failing to visit the scene of the alleged rape until September 2018; (3) failed to analyze evidence like Mr. Artuso's phone and work records.   (ECF No. 89, PageID #2292.)   Third, Plaintiff claims Detective Felt intentionally tampered with the investigation file, removing the phone and work records before he sent the file to Iarocci.  (*Id.*, PageID #2293.)

First, the Court will address the search warrant.  Detective Felt executed an affidavit in support of a warrant to search Mr. Artuso's home on December 13, 2017. (ECF No. 74, PageID #1162.)  The affidavit stated that Mr. Artuso engaged in "proven criminal activity," and Mr. Artuso argues that Detective Felt had no factual basis to include that statement in the affidavit.  (ECF No. 74, PageID #1162 & 1166; ECF No. 89, PageID #2287.)   Detective Felt executed the affidavit before Smith even reported her allegation of rape.  And the affidavit and search warrant sought evidence relating to the theft allegation against Mr. Artuso, not the rape investigation.  Even assuming the falsity of the affidavit, it does not negate the presumption that probable cause existed for *this* prosecution.

Next, the Court addresses the litany of investigative failures Plaintiff identifies.  The record demonstrates that Detective Felt failed to take certain steps a

reasonable investigator would take in response to Smith's allegation, such as interviewing Mr. Artuso, visiting the crime scene, and analyzing Mr. Artuso's phone and works records.  (ECF No. 74, PageID #1137, #1142 & #1188–89; ECF No. 73, PageID #955; ECF No. 84, PageID #2138.)  Like the appellants in *Lester*, Mr. Artuso's "fine-tooth combing over every detail seems more suited for arguments to the jury about why the government did not prove its case beyond a reasonable doubt" than arguments to the Court about whether the prosecutor had probable cause to bring the case.  *Lester*, 986 F.3d at 610.  As the Sixth Circuit explained in dicta, "purported omission[s] of exculpatory evidence," as opposed to the false statements contemplated in *King*, "may not suffice to defeat the presumption [of probable cause]."  *Id.* at 608–09 (citing *King*, 852 F.3d at 587).  Mr. Artuso points to several concerning omissions. But *King* requires more.  Detective Felt's failures are not affirmative false statements or falsified evidence that defeat the presumption of probable cause the grand jury indictment created.

In *King*, the defendant officer picked up a cold murder case.  *King*, 852 F.3d at 573.  He applied for a search warrant knowing that no probable cause supported it because the first investigation team applied for the same warrant with the same available evidence and it was denied.  *Id.*  Also, he ignored forensic evidence of which he had actual knowledge to assert falsely that plaintiff's gun was the murder weapon, while omitting that she could not have disposed of the victim's body alone as alleged because she was missing a leg at the hip.  *Id.* at 574–75.  Defendants' investigative

missteps here are not comparable to the defendant's affirmative "false statement" and "concomitant omissions" in *King*.

That leaves Plaintiff's one affirmative argument that Detective Felt intentionally tampered with the investigation file.  According to Plaintiff, "the evidence indicates that Defendants actively attempted to conceal the records from the Prosecutor by tampering with the investigative file."  (ECF No. 89, PageID #2287.) But Plaintiff does not cite the record in support of this proposition.  Review of the record establishes that Detective Felt acted negligently when he investigated the alleged theft and alleged rape under the same investigation number and failed to document what was in the files transmitted to Iraocci's office.  (ECF No. 74, PageID #1129.)  In any event, it is undisputed that Iarocci did not see Mr. Artuso's work and cell phone records before he convened the grand jury, even though Detective Felt sent him the investigatory file.  (ECF No. 76, PageID #1373.)  Even assuming a genuine dispute of fact on this point, the missing records at the grand jury stage were not material to Mr. Artuso's ultimate prosecution.

### II.A.2.iv. Materiality

Under *King*, the presumption of probable cause remains conclusive unless Defendants' "false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff." *King*, 852 F.3d at 587–88.  "A constitutional violation has occurred if the falsehoods were necessary to the finding of probable cause, but not if probable cause could have been independently established." *Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *5 (6th Cir. Nov. 16, 2022).  Judge Iarocci testified that he would have presented the

rape case to the grand jury even if he had seen the allegedly exculpatory work and cell phone records before he convened the grand jury. (ECF No. 76, PageID #1379–-80.) Even after he received those records, he did not dismiss the case and maintained his belief that he could obtain a conviction. (*Id.* at 1380.) Further, as described above, the records at issue leave little time—but not no time—for the rape to have occurred as Smith reported it. Iarocci received additional evidence from Mr. Artuso and his defense attorney between the grand jury proceeding and trial and directed investigators to take follow-up steps in response to that evidence. Still, he chose to bring the case to trial.

As Plaintiff notes, one grand juror asked Detective Felt about why he did not present records of Mr. Artuso's work activities on the day in question. (ECF No. 89, PageID #2294; ECF No. 76, PageID #1454–55.) However, the grand juror asked that question before Smith herself testified. (ECF No. 76, PageID #1458–76.) The grand jurors were entitled to evaluate Smith's credibility in making their decision to indict Mr. Artuso and apparently found her credible. Even assuming that Detective Felt altered the file intentionally, the presumption of probable cause the indictment created remains conclusive because the missing records at the grand jury stage were not material to Mr. Artuso's ultimate prosecution for rape.

\*     \*     \*

For the foregoing reasons, the record does not rebut the presumption of probable cause, and Plaintiff's malicious prosecution claim fails as a matter of law.

31

### II.B.  Failure to Intervene

Courts may hold a supervisor liable for the unconstitutional conduct of a subordinate where the official approved or knowingly acquiesced in the conduct. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 856 (6th Cir. 2020).  Plaintiff's failure to intervene claim necessarily rests on failure to intervene in the unlawful conduct of others, and the record shows no such conduct in the form of malicious prosecution. Therefore, the Court **GRANTS** Defendants' motion for summary judgment on this claim.

### II.C.  Plaintiff's *Monell* Claim

In their motion for summary judgment, Defendants argue that the City of Ashtabula cannot be liable under *Monell* because, even if Plaintiff established a predicate constitutional violation, he has identified no City policy that is the moving force behind that violation.  (ECF No. 81-1, PageID #2068–69.)  Plaintiff counters that Detective Felt's actions were "consistent with departmental policy."  (ECF No. 89, PageID #2292.)  Specifically, he argues that Detective Felt was a policymaker and that there was a departmental policy not to make an independent determination of probable cause before sending an investigation to the prosecutor's office.  (ECF No. 89, PageID #2296.)  Because Plaintiff has not established a predicate constitutional violation, even if he has sufficiently placed a *Monell* claim at issue, that claim fails as a matter of law.

### III.  State-Law Claims

Having dismissed the federal claims against Defendants, the Court considers whether to exercise supplemental jurisdiction over Plaintiff's State law claims.  A

court may exercise supplemental jurisdiction over related claims that "form part of the same case or controversy" as any claim over which the court has original jurisdiction.  28 U.S.C. § 1367(a).  Further, Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claims or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  In deciding whether to exercise supplemental jurisdiction, the district court should consider factors such as "comity, judicial economy, convenience, and fairness."  *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620–21 (6th Cir. 1999).  Because the Court grants Defendants' motion with respect to Plaintiff's federal claims, which are the only claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's State law claims.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion with respect to Claims One and Two.  The Court declines to exercise supplemental jurisdiction over Plaintiff's State-law claims and, therefore, **DISMISSES** those claims without prejudice.

**SO ORDERED.**

Dated:  December 27, 2022

_____

          J. Philip Calabrese
          United States District Judge
          Northern District of Ohio